# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER ADAM HERMOSILLO,<br><br>  Plaintiff,<br><br>  v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>  Defendant. | Case No.: 1:19-cv-0066 - JLT<br><br>ORDER REMANDING THE ACTION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF CHRISTOPHER ADAM HERMOSILLO, AND AGAINST DEFENDANT, THE COMMISSIONER OF SOCIAL SECURITY |

Christopher Adam Hermosillo asserts he is entitled to supplemental security income under Title XVI of the Social Security Act. Plaintiff argues the administrative law judge erred in evaluating the medical record and seeks judicial review of the decision to deny his application for benefits. Because the ALJ erred in rejecting limitations identified by consultative physicians, the matter is **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## **BACKGROUND**

In March 2015, Plaintiff filed an application for benefits, asserting he was not able to work because he was paranoid, stayed indoors all day, and suffered severe migraines. (Doc. 9-6 at 2; Doc. 9-7 at 6) The Social Security Administration denied the applications at the initial level and upon reconsideration. (Doc. 9-5 at 6-10, 12-16) Plaintiff requested a hearing and testified before an ALJ on September 11, 2017. (Doc. 9-3 at 16, 34) The ALJ determined Plaintiff was not disabled under the Social Security Act, and issued an order denying benefits on January 19, 2018. (Doc. 9-3 at 16-28)

1

Plaintiff filed a request for review of the decision with the Appeals Council, which denied the request on November 13, 2018. (*Id.* at 2-4) Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security.

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that a claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial

gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## ADMINISTRATIVE DETERMINATION

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520, 416.920(a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

**A.    Relevant Medical Opinion Evidence[1]**

Dr. Jeanne Card performed a consultative psychiatric evaluation on July 10, 2015. (Doc. 9-8 at 12-16) Plaintiff's chief complaints included paranoia and severe migraines. (*Id.* at 12) He stated that he would "stay inside all day," because he felt that everyone was out to get him. (*Id.*) Plaintiff said he had been hospitalized when suffering from suicidal ideation, and he described hallucinations that began five years prior. (*Id.* at 13-14) When Plaintiff was asked to indicate his current depression level on a scale "from 1-10 with one being slightly depressed and 10 being suicidal," Plaintiff stated he was at a four. (*Id.* at 14)

Dr. Card observed that Plaintiff "was cooperative and put forth a good effort" during the examination, with a "productive" level of concentration. (*Id.* at 13) She found Plaintiff "presented his thoughts in an appropriately paced, understandable and relevant fashion, also clear, coherent, organized and relevant to [the] subject at hand." (*Id.* at 14) Plaintiff "was able to recall 3/3 objects immediately and 1/3 objects after five minutes." (*Id.*) Dr. Card found Plaintiff was able to spell the word "world" forward and backward, and "perform a simple three-step command." (*Id.*) Dr. Card diagnosed Plaintiff with "Major depressive disorder, severe, with psychotic features." (*Id.* at 15) She gave Plaintiff a GAF

---

[1] Plaintiff's challenge the ALJ's evaluation of medical opinions addressing his mental abilities and limitations. Thus, while the Court has the Court has read and considered the entire medical record, this summary omits evidence related to Plaintiff's physical impairments.

score of 55[2] and opined Plaintiff's "symptom severity appear[ed] to be in the moderate range." (*Id.*) Dr. Card concluded:

> The claimant is currently able to perform simple and repetitive tasks. However, his ability to perform these tasks on a regular basis is moderately impaired at this time due to psychiatric symptoms.
>
> The claimant's ability to perform detailed and complex tasks is moderately impaired at this time.
>
> The claimant was calm and cooperative. There were no significant maladaptive behaviors observed during the course of the evaluation which appeared to limit his ability to interact appropriately with coworkers, supervisors or the public.
>
> However, the claimant's ability to work with coworkers, supervisors and the public and perform work activities on a consistent basis without special or additional instruction is moderately impaired at this time.

(*Id.* at 16-17)

Dr. R. Torigoe reviewed available records as part of a case analysis for the Social Security administration on September 12, 2015. (Doc. 9-4 at 7-12) Dr. Torigoe noted that at that point, Plaintiff did not have any mental health care and was not on medication. (*Id.* at 8) According to Dr. Torigoe, "there [was] no medical evidence that objectively support[ed] the severe limitations recommended" by Dr. Card, and the "limits were based on [claimant] testimony only." (*Id.* at 7-8) Dr. Torigoe opined Plaintiff's ability to understand, remember, and carry out short and simple instructions was "[n]ot significantly limited." (*Id.* at 9) Dr. Torigoe also determined Plaintiff was "[n]ot significantly limited" with the abilities to maintain attention and concentration for extended periods; work in coordination or proximity to others; and complete a normal workday and workweek. (*Id.* at 9-10) Further, Dr. Torigoe opined Plaintiff was "[m]oderately limited" with his ability to understand, remember, and carry out detailed instructions; and sustain an ordinary routine without special supervision. (*Id.*) Dr. Torigoe concluded Plaintiff could perform "simple routine work." (*Id.* at 11)

On September 21, 2015, Plaintiff had an initial assessment for mental health treatment with Merced County. (Doc. 9-8 at 17) Plaintiff reported he was "paranoid going outside" and did "not like

---

[2] GAF scores range from 1-100, and in calculating a GAF score, the doctor considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, 34 (4th ed.) ("DSM-IV). A GAF score of 51-60 indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflict with peers or co-workers)." *Id*.

shopping or being around people." (*Id.*)  He explained that even in the facility's waiting room, he "closed his eyes and fell asleep in order to avoid looking and thinking of others in the waiting area." (*Id.*)  Charman Batiste, MFTI, opined Plaintiff should receive individual therapy, a psychiatric referral, and participate in socialization groups later in treatment.  (*Id.* at 20)  Plaintiff began therapy, and was diagnosed with PTSD, social phobia, anxiety disorder, and a history of polysubstance abuse in remission.  (Doc. 9-8 at 29, 34; *see also* Doc. 9-9 at 6)

On November 24, 2015, Dr. Joshua Schwartz reviewed the record following Plaintiff's request for reconsideration of his application, and noted no additional records related to Plaintiff's mental health had been received by the Administration.  (Doc. 9-4 at 19)  He determined Plaintiff had mild restriction with activities of daily living; mild difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence, or pace.  (*Id.*)  Dr. Schwartz concluded the available records were consistent with the residual functional capacity identified at the initial level, and adopted the limitations identified by Dr. Torigoe.  (*Id.*)

Dr. Philip Cushman performed a consultative examination to evaluate Plaintiff's cognitive functioning on July 5, 2017.  (Doc. 9-9 at 5-12)  Dr. Cushman noted that he reviewed mental health records from Merced County, including an intake form, diagnoses, and treatment notes.  (*Id.* at 6)  In addition, Dr. Cushman administered the WAIS-IV, Wechsler Memory Scale IV, and Trails A and B tests.  (*Id.* at 9)  With the WAIS-IV, Dr. Cushman determined Plaintiff was "intellectually functioning in the mildly mentally deficient range," and his abilities with "sustained attention and concentration also fell in the mild mentally deficient range."  (*Id.* at 10)  Dr. Cushman noted Plaintiff completed the Trails A test "in 97 seconds with no errors," which Dr. Cushman found indicated "moderately impaired functioning due to the slowness."  (*Id.*)  However, the Trails B test "was aborted when it was clear that [Plaintiff] was going to take an inordinate amount of time to complete that task."  (*Id.*)  Dr. Cushman opined the results of the Wechsler Memory Scale IV showed "impaired functioning" because Plaintiff named "only 7 fruits in 30 seconds," and only recalled six details from short stories that were read to him.  (*Id.*)  Dr. Cushman gave Plaintiff a GAF score of 55 and indicated Plaintiff "would benefit from ongoing medical management of his various medical conditions."  (*Id.* at 11)  Dr. Cushman opined:

> Christopher Hermosillo is not capable of performing any detailed or complex tasks in a work setting. He would have problems performing simple and repetitive tasks in a work

> setting for any length of time. He would have difficulties independently regularly attending or consistently participating in a work setting. He would not be able to work a normal workday or work week. Special or additional supervision would be needed in the area of monitoring for substance abuse. He would also need a lot of assistance trying to reassure him and keep him focused, all of which would become difficult. He would have a difficult time following simple verbal instructions from supervisors, and great problems with complex instructions. He would have great difficulties getting along with supervisors, coworkers, and the general public in a short period of time. He will also have great difficulties dealing with the usual stressors encountered in a competitive work environment, appearing highly under- socialized and antisocial in his tendencies.

(*Id.*) Dr. Cushman also expressed "reservations about [Plaintiff's] emotional ability in managing his own funds," and his cognitive limitations in doing so. (*Id.*)

**B.    Plaintiff's Hearing Testimony**

Plaintiff testified before the ALJ at an administrative hearing on September 11, 2017. (Doc. 9-3 at 36) He stated that he was 55 years old and lived in the garage of his sister's home. (*Id.* at 37) Plaintiff said he was not able to work because he was "very afraid of society" and "very afraid to leave where [he stayed] at." (*Id.* at 38) Plaintiff stated he could not go outside and felt everybody wanted to hurt him. (*Id.*) He confirmed he was receiving mental health treatment, including seeing a therapist and taking medication, which was managed by his sister, and helped "[s]ometimes." (*Id.* at 38, 41)

He reported he went grocery shopping once a month with his sister, who he asked to circle the parking lot "two or three times… looking for any individual that staring at [Plaintiff]." (Doc. 9-3 at 39-40) Plaintiff said his sister would also escort him into the house when he called, and she would "stand in front of the bathroom door while [he took] a shower or use[d] the restroom," because Plaintiff felt like he could not trust his sister's husband or children. (*Id.* at 40)

Plaintiff stated that he occupied his time by watching television and sleeping "a lot." (Doc. 9-3 at 41) Plaintiff said he slept "the majority of the day with the medication," but other times would stay up and not sleep for two to three days. (*Id.*) Plaintiff said he did not socialize, and he would not "associate with [his] family at all or anybody outside," and it had "been like that for years." (*Id.*)

**C.    Vocational Expert Testimony**

Judith Majurian, a vocational expert ("the VE"), also testified before the ALJ. (Doc. 9-3 at 48) The ALJ asked the VE to consider a hypothetical "individual with the same age and education as the claimant." (*Id.*) In addition, the ALJ stated: "[T]his individual is capable of non-complex and routine

tasks with one to three-step instructions in a routine or really static work setting, no public contact and little work as possible with coworkers. So, no work in collaboration or teamwork. And, only brief, superficial interactions with supervisors. (*Id.* at 48-49) The VE opined a person with these limitations could work as an industrial cleaner, DOT 381.687-018; cleaner II, DOT 919.687-014; and equipment cleaner for after-hour jobs, DOT 599.684-010.[3] (*Id.* at 49)

Next, the ALJ added to the limitations, stating the "individual would need seizure precautions with no work at heights or with moving mechanical parts, [and] no prolonged exposure to dust, fumes, gases or irritants." (Doc. 9-3 at 49) The VE opined the jobs identified would not be available. (*Id.*) However, the VE believed the individual could work as a marker II, DOT 920.687-126; a regular marker, DOT 209.5870034; and router, DOT 222.587-038. (*Id.* at 49-50)

The ALJ inquired whether the individual would be able to keep the jobs identified if he "would consistently miss three days a month." (Doc. 9-3 at 50) The VE opined that "would readily exceed the allowable absences." (*Id.*)

**C.    The ALJ's Findings**

Pursuant to the five-step process, the ALJ determined Plaintiff not engaged in substantial gainful activity since the application date of March 31, 2015. (Doc. 9-3 at 18) Second, the ALJ found Plaintiff's severe impairments included "major depressive disorder and post-traumatic stress disorder (PTSD)." (*Id.*) At step three, the ALJ determined Plaintiff's impairment did not meet or medically equal a Listing. (*Id.* at 19-21) Next, the ALJ found:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: capable of non-complex and routine tasks with one to three step instructions, routine or static work setting, no public contact, no work in collaboration or teamwork, only brief superficial interactions with supervisors, no operation of motor vehicles, no work at heights or with moving mechanical parts, and no prolonged exposure to dust, fumes, gases, or chemical irritants.

(*Id.* at 21-22) Plaintiff did not have past relevant work for the ALJ to evaluate at step four. (*Id.* at 26) At step five, the ALJ determined with Plaintiff's residual functional capacity, there were "jobs that

---

[3] The *Dictionary of Occupational Titles* ("*DOT*") by the United States Dept. of Labor, Employment & Training Admin., may be relied upon "in evaluating whether the claimant is able to perform work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990). The DOT classifies jobs by their exertional and skill requirements and may be a primary source of information for the ALJ or Commissioner. 20 C.F.R. § 404.1566(d)(1).

7

exist in significant numbers in the national economy that the claimant can perform." (*Id.* at 27) Thus, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. (*Id.*)

## **DISCUSSION AND ANALYSIS**

Plaintiff argues that "[t]he ALJ erred by rejecting the opinion from Dr. Cushman, and by failing to include the limitations opined by Dr. Card in the [residual functional capacity]." (Doc. 15 at 1, 9) (emphasis omitted) The Commissioner argues the residual functional capacity assessment was proper based upon the ALJ's "consideration of the record as a whole, including medical opinions, treatment records, and Plaintiff's subjective statements." (Doc. 18 at 18)

### A. Evaluation of the Medical Evidence

When evaluating the evidence from medical professionals, three categories of physicians are distinguished: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). In general, the opinion of a treating physician is afforded the greatest weight, but it is not binding on the ultimate issue of a disability. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). Further, an examining physician's opinion is given more weight than the opinion of non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); 20 C.F.R. § 404.1527(d)(2). Finally, an ALJ must consider the opinions of other medical professionals— such as nurse practitioners, physician assistants, and social workers—who may offer "judgment about some of the same issues addressed in medical opinions from acceptable medical sources." 20 C.F.R. § 404.1527(f)(1); *see also Revels v. Berryhill*, 874 F.3d 648, 655 (9th Cir. 2017) (describing circumstances when opinions from "other sources" may be considered acceptable medical opinions).[4]

When there is conflicting medical evidence, "it is the ALJ's role to determine credibility and to resolve the conflict." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The ALJ's resolution of the conflict must be upheld by the Court when there is "more than one rational interpretation of the

---

[4] The Social Security Administration has recently adopted new rules applicable to claims filed after March 27, 2017, which expand the category of acceptable medical providers to include, among others, nurse practitioners. 20 C.F.R. §§ 404.1502(a)(6), (7), (8); 416.902(a)(6), (7), (8) (2017); *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). These revisions do not apply to Plaintiff's claim, which was filed in 2015.

evidence." *Id.; see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ"). An ALJ may reject the opinion of a medical sources that is contradicted by another opinion with "specific and legitimate" reasons, supported by substantial evidence in the record. *Lester*, 81 F.3d at 830; *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

The ALJ was required to identify specific and legitimate reasons supporting her decision to reject the conclusions of Drs. Card and Cushman to the extent they conflicted with the opinions of Drs. Torigoe and Schwartz. Plaintiff contends the ALJ failed to meet this burden, and the limitations identified by Drs. Card and Cushman should have been incorporated into the residual functional capacity.

### 1. Opinion of Dr. Card

The ALJ noted that Dr. Card opined Plaintiff was "capable of managing his funds;" and "moderately impaired in his ability to perform simple and repetitive tasks." (Doc. 9-3 at 24) In addition, the ALJ observed that Dr. Card found Plaintiff and "moderately limited" with the ability "to perform detailed and complex tasks;" "to work with coworkers, supervisors, and the public;" and "to perform work activities on a consistent basis without special or additional instruction." (*Id.* at 24-25) The ALJ explained the weight given to these opinions, explaining:

> I give Dr. Card's opinion great weight. Dr. Card's opinion is consistent with the claimant's alleged symptoms and activities of daily living which show some limitation in interacting with others and with his ability to carry out instructions and concentrate. (Exhibit 4E; Claimant's Hearing Testimony). Dr. Card's opinion is also supported by the claimant's treatment record which shows the claimant regularly exhibited full orientation, normal affect, good eye contact, engaged interaction, appropriate thought processes, and fair insight and judgment (Exhibits 3F/6-7, 13, 21; and 5F/1, 3, 8, 13, 17, 21, 23, 25, 27, 29, 31). Additionally, her opinion is based on an in-person examination of the claimant and on objective testing of the claimant's capabilities and mental functioning. Therefore, Dr. Card's opinion is reasonably consistent with the residual functional capacity stated herein and is given great weight.

(*Id.* at 25)

Plaintiff contends despite the ALJ's assertion that "great weight" was given to the opinion, the ALJ "silently dismissed the portion of her opinion that identified impairment in Plaintiff's ability to consistently perform simple, routine tasks and to persist on such tasks without special supervision."

9

1  (Doc. 15 at 10)  Plaintiff argues the ALJ erred because she could not "simply pick through an opinion and ignore the portions of the opinion that contradict the [residual functional capacity]." (*Id.*)

As Plaintiff argues, the ALJ does not address Dr. Card's opinion that Plaintiff's ability to perform simple and tasks "on a regular basis is moderately impaired… due to psychiatric symptoms." (*See* Doc. 9-3 at 25; *see also* Doc. 9-8 at 16)  Although it is unclear whether the opinion relates to an opinion that Plaintiff's ability to sustain concentration or pace, the ALJ's failure to address this evidence is clearly an error, as either interpretation relates to Plaintiff's ability to complete a normal workday and workweek. *See Vincent v. Heckler,* 739 F.2d 1393, 1395 (9th Cir. 1984) (ALJ must explain "why significant probative evidence has been rejected"); *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (the ALJ "may not reject significant probative evidence without explanation").

2. Opinion of Dr. Cushman

Plaintiff observes that "Dr. Cushman opined Plaintiff's cognitive, social, and adaptive functioning levels are such that he is unable to meet the demands of even simple work on a regular and continuing basis." (Doc. 15 at 9)  Specifically, Plaintiff notes Dr. Cushman "opined Plaintiff would have problems performing even simple and repetitive tasks in a work setting for any length of time;" "difficulties participating in a work setting;" difficulties getting along with supervisors, coworkers, or the general public;" and "could not complete a regular workday or workweek." (*Id.*)  Plaintiff contends the ALJ erred in rejecting each of these conclusions. (*Id.*)

Explaining the weight given to the opinions from Dr. Cushman, the ALJ stated "partial weight" was given to Dr. Cushman's opinion "in limiting the claimant to simple tasks and some social interactions insofar as the limitations are consistent with the opinions of DDS and Dr. Card which are persuasive…" (Doc. 9-3 at 26)  In addition, the ALJ stated:

> Dr. Cushman's opinion is also overly restrictive inconsistent with the mental status examination findings which showed the claimant was alert and fully oriented, and exhibited good eye contact, cooperative mood, engaged interaction, good personal hygiene and grooming, congruent affect, and fair judgment and insight; and inconsistent with the claimant's activities of daily living (Exhibits 4E; 3E; 3F/6-7, 13, 21; 5F/1, 3, 8, 13, 17, 21, 23, 25, 27, 29, 31; and Claimant's Hearing Testimony). Therefore, I assign partial weight to Dr. Cushman's opinion.

(Doc. 9-3 at 26)

Significantly, the ALJ fails to explain how Dr. Cushman's observations of Plaintiff's demeanor,

hygiene, and judgment are inconsistent with the conclusions that Plaintiff "would have problems performing simple and repetitive tasks in a work setting for any length of time." (*See* Doc. 9-3 at 26; *see also* Doc. 9-9 at 11) Dr. Cushman administered the WAIS-IV, Wechsler Memory Scale IV, and Trails B test, which Dr. Cushman determined showed Plaintiff was "intellectually functioning in the mildly mentally deficient range," and his abilities with "sustained attention and concentration also fell in the mild mentally deficient range." (*Id.* at 10) In addition, Dr. Cushman opined the results of the Wechsler Memory Scale IV showed "impaired functioning" because Plaintiff named "only 7 fruits in 30 seconds," and only recalled six details from short stories that were read to him. (*Id.*) It is unclear why the ALJ believed these results—and Dr. Cushman's findings following the administration of these tests— were undermined by observations regarding Plaintiff's ability to maintain eye contact, cooperative mood, and hygiene.

Further, the ALJ fails to explain how Plaintiff's activities of daily living are inconsistent with the limitations identified. The Ninth Circuit determined that an ALJ may reject an opinion where the physician identifies restrictions that "appear to be inconsistent with the level of activity that [the claimant] engaged in." *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *see also Fisher v. Astrue,* 429 Fed. App'x 649, 652 (9th Cir. 2011) (where limitations identified by the doctor conflicted with the claimant's daily activities, the inconsistency was a specific and legitimate reason for rejecting the physician's opinion). However, the ALJ has not explained how the opinions of Dr. Cushman conflicted with Plaintiff's limited activities. Consequently, the purported conflict between the limitations identified by Dr. Cushman and Plaintiff's level of activity does not support the decision to reject portions of Dr. Cushman opinion.

**B.     Remand is Appropriate**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

The ALJ erred by failing to address the opinion of Dr. Card related to Plaintiff's ability to perform simple and repetitive tasks "on a regular basis." Likewise, the ALJ failed to identify specific and legitimate reasons for rejecting limitations identified by Dr. Cushman related to Plaintiff's ability to "perform[] simple and repetitive tasks in a work setting for any length of time," "difficulties independently regularly attending or consistently participating in a work setting;" and complete "a normal workday or work week." (*See* Doc. 9-9 at 11) Additional proceedings are necessary for the ALJ to properly address all probative evidence and re-evaluate the medical record.

## **CONCLUSION AND ORDER**

For the reasons set forth above, the Court finds the ALJ failed to apply the correct legal standards in reviewing the medical record, and the decision cannot be upheld. *See Sanchez*, 812 F.2d at 510. Accordingly, the Court **ORDERS**:

1. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and
2. The Clerk of Court is directed to enter judgment in favor of Plaintiff Christopher Adam Hermosillo, and against Defendant, the Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **February 7, 2020**   **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE